Please all rise. Hear ye, hear ye, this Honorable Appellate Court of the 2nd Judicial District is now open. The Honorable Susan F. Hutchinson, retired. Please be seated. Your Honors, the first case in the Johnson School is 2-24-0506 In re Estate of Thomas A. Butts, deceased. Rose Ellen May, plaintiff's appellee. The Adam Butts of Stephen Butts, defendant's appellate. On behalf of the Butts, Ms. Ellen May. On behalf of the appellee, Mr. John J. Butler. Good morning, Counsel. Good morning. And Ms. Green, if you're ready, you may proceed. Good morning. May it please the Court. Good morning. My name is Ellen Green. I represent the appellate, Stephen Butts, individually. And as special representative to the claims of Alan Butts, individually. And as the administrator of the Estate of Thomas Butts. As you know, we're appealing the judgment entered in a bench trial on an alleged oral contract for a will. The trial court awarded plaintiff all the assets of Thomas' estate. And it also imposed a constructive trust on his retirement accounts for her benefit. The primary issue here is whether the judgment was against the manifest way to the evidence. And we can see this is a difficult standard to meet. But we believe that we have met that in this case. The evidence established a few things. Plaintiff and Tom Butts lived together and they were in a long-term relationship. Plaintiff helped Tom with his business and the care of his parents. And there's evidence that Tom told others that he wanted to leave everything to plaintiff. They executed wills to benefit each other. In Tom's will, he left all of his assets to the plaintiff. Except, importantly, the proceeds of a life insurance policy and his retirement accounts. Now, what is absent in this case is independent evidence of an agreement, a contract, under which Tom would leave plaintiff all of his assets if she provided certain services and if she left him everything in her will. Well, didn't we have several witnesses who testified on her behalf? Yes. But the witnesses who testified on her behalf, they testified as to Tom's testamentary intent. They would say, yes, Tom said he wanted to leave her everything. Or they also testified that if Tom had a will, that would express his intent. But what they didn't testify to is that there was any bargain or that he told them they had disagreement. It's all, yes, I meant to leave Rose everything, but that's not enough to make a contract. Well, it certainly wouldn't be enough if she was the only one who testified that this is what they had talked about. But we needed independent evidence, and we had, what, four witnesses? Three or four, I guess. But they're not testifying about an agreement. They're only testifying is that's what Tom wanted to do. What was his intention? It's just his intention. It's just, I meant to leave this to her. That doesn't make a contract. I see your point, but I wonder, it is corroborative, isn't it, or do you not concede that? It's a small point that, yes, that's he intended to do that, whether he did that or not. I mean, that would affect, you know, does the will reflect his true intention? Well, Thomas said in his will that Rose had been on my side. We share the same goals. He talks about the home, the business. I mean, can't we infer that his intent was consistent with what the witnesses testified to, that he intended to leave everything to Rose? Yes, he may have intended to leave her everything. I mean, that could be true. But that doesn't mean that back in 2014 they entered into this contract that, you know, I'll leave you everything if you do this for me, if you take care of my business, if you take care of my father, and you leave me everything, then I'll give everything to you. That's different than just saying, you know, this is the love of my life. I want to leave her everything. In which case you can either get married or you can get, you know, and inherit under the intestate statute, or you can execute a valid will, you know, that's properly attested. Or neither of those happen, so they're going with option three, trying to establish this sort of contract. Were all of the Edward Jones accounts payable on death? I believe so. Beneficiary designation. Historically, Illinois law, interpreting the General Assembly's intent, applying common rules of statutory construction, the intention of the legislature was to validate specific testamentary disposition of funds in a pay on death account, even if it disagrees with the will. That's correct. Yes, and that was the basis for, we've asserted that, the third-party beneficiary contract act that you're referring to. This is the Savings and Loan Act. Oh, it's even older. But it's other statutes where you indicate your testamentary intent in a document. And that's what was reflected. He had designated first his parents, Alan and Palma, and then at the time of Tom's death, Alan was the sole surviving named beneficiary on those Edward Jones accounts. And, you know, this statute, I think, is for retirement accounts and insurance policies, and maybe that other statute applies to bank accounts. But it makes those designations trump any sort of designation in a later will, because the statute says these cannot be defeated or impaired by any rule of law governing wills. Right. Sometimes the law is not fair, right? It's not. It seems to be unjust because it's completely at odds with Thomas' intent to disinherit his brothers. But, you know, the remedy to that would be to get your paperwork in order. Well, Rose argues that this is a case where the statutes don't apply because there's equitable relief that the court can give her. But the legislature can limit remedies that are available to plaintiffs. But it seems completely unfair, doesn't it? I mean, it's unfair. Well, that's, you know, maybe what happens in this case. But that was a decision of the legislature to make these designations binding. And he had every opportunity. He could have changed those. If we were to agree with Rose that there was a contract to make a will and agree with that, and we agree with you that the statute trumps the will, the purported will or the contract for a will, then Stephen and Michael's heirs get the Edward Jones account. Well, the Edward Jones accounts would go to the heirs of Allen.  Stephen and Michael. I don't know that that's in the record. It may or may not be what Allen's will provides. I think there's some reference to it. Allen was questioning about his will and his trust. He was worth over $2 million upon his death, right? Yes, but I don't think that the age or health of the beneficiary or the wealth of the beneficiary is relevant. This was Tom's decision who he wanted to designate as a beneficiary of these accounts. And the claim for an oral contract that Rose had at the time of Tom's death was just a claim. It was not a vested right. She didn't have, you know, this wasn't adjudicated. It was just, oh, at the time, you know, I'm saying there was this oral contract for a will, but that's just, you know, a rule of law that governs wills, a contract for a will, or even any equitable remedy that would arise out of that, like the imposition of a constructive trust. The beneficiary designation is going to control even if she, the court agrees that she did establish an agreement made in 2014 that was binding on Tom. Well, the fact is she did do most of the things that were suggested, I guess we'll call it. She did take care of her mother-in-law, or not her mother-in-law because they weren't married, but took care of her for some time. That's true. Took care of Alan, the elder, took care of the books for, what is it, Leading Edge? Yes, Leading Edge is Tom's consulting business. Right. And then Warbird, she even, they purchased a couple of them together, didn't they, some of the planes? I don't know about the ownership who contributed what to that, but it just, the law in Illinois is that services that are provided by, you know, live-in family members or partners, they're presumed to be gratuitous. That, in other words, you do things for people because you're in a close, loving relationship, even without a promise of compensation. In cases where they have found contracts for will, it would be a case like, you know, a housekeeper, you know, the decedent says, I'll give you my house if you take care of me until I die. Well, that's not maybe the type of services somebody would provide unless they're being compensated, you know, a non-relative coming to the house, or there's some promise that they're going to be taken care of in a will. But here, the evidence is that they had, you know, a very close relationship. They were, he was like a, they were domestic partners. But there's not, again, any independent evidence of that sort of a contract, that agreement. This is just the type of thing that you would do if you're in a relationship with someone. Well, it's the type of thing you might do if you're married, but I'm not sure would be a relationship. Pardon me. Well, I don't think it is. Because the housekeeper and the decedent are in a relationship, too. It's just not the type of, it's not a marriage-type relationship. No, but it's other than people living in the same household, are these things, because they're in a relationship, that you would do for somebody because you're in a relationship versus, well, I'm only doing these things because I'm going to be rewarded, you know, if you die before me. But, you know, again, aren't those, I'll call them the Tennessee wills, you know, where after the plane ride where they had some danger, then there's testimony that they executed these online wills that were, I'll call them joint and mutual. Doesn't that evidence intent corroborate the alleged agreement and support the trial court's ruling that there was reliance? Well, if they're saying that there's a substantial performance, and I guess I would just add it's things like this that make me concerned, that there's not enough to overcome the burden that the ruling has to be against the manifest way of the evidence. Well, if we're looking at these wills that they executed in 2020 as evidence of their agreement, she shouldn't be entitled to the Edward Jones accounts for that reason as well. Because, you know, if there's a schedule on there where they, Tom says that that should go to Warburg's, but again, we would say that the beneficiary designation still controls whether you put it in a later will. So if that is their intent, that shouldn't be part of the agreement. Well, by naming Allen and Palmer as the beneficiaries of the Edward Jones accounts, doesn't that take those accounts out of the probate assets? That's true. They are not probate assets. Right. They just transfer on death immediately. And the other strange thing is in this case you have a will that was executed, although there's a question of whether it was valid or not, and that was another issue that we had, but kind of signed it. So she's aware right there she's signing that what she calls a temporary will, even though it clearly does not give her everything that she claimed he had agreed to give her. But another error that the trial court made and another consideration for the court is that right after that, the trial court in a short amount of time, he invalidated the will just on a motion to strike an affirmative defense, not because it didn't have enough people to attest to it, but because he didn't like the effect of it. That, well, if it's valid, neither of you takes under each other's will because you signed this agreement. And that is something under the case law you must, the trial court must weigh in that in weighing the evidence, but again, it didn't consider it to be a valid will. The court considered it to be an invalid will. Illinois law is very clear about the requirements for a valid will and what happens to somebody's assets if they die without one. Now allowing unmarried domestic partners to recover based on alleged oral promises, it undermines the uncertainty as to the distribution of assets that these statutes are designed to provide. This is exactly the kind of case that the probate laws were meant to avoid, this type of result. For these reasons, we ask that you reverse the judgment that was entered in plaintiff's favor. Thank you. Thank you. You'll have an opportunity to reply if you choose so after Mr. Duffy finishes. Good morning and may it please the court. I'm John Duffy on behalf of Rose Ellen May, the appellee in this case. I think this case is a compelling one. When I was asked to take over the appeal, I began to read and I found the story very compelling. What we see here are laypeople trying to apply the law and missing it up. But what we see in the attempt to apply the law as laypeople is a clear intention to give the assets to the other. The evidence that they asked Judge Grady to consider that they thought was dispositive was the will itself. He did consider it. It's in his opinion. He found it compelling. When we see compelling facts of laypeople trying to apply the law, what does it make us think about? Equity. Well, we are judges, we're jurists, and we're not legislators. So talk about the impact of the Third Party Beneficiary Contract Act and how you get around it. Thank you, Your Honor. We do, because one of the things the court asked my colleague was the statute itself. And the statute itself, let's read it and then let's say that there's no way it applies. The Third Party Beneficiary Act applies to wills, gift, or intestacy. So let's talk about all three branches of that law. Wills have their own section of statutes and laws. Gifts have their own set of statutes and laws. Intestacy is statutory. What happened here and what Judge Grady found was a contract. A contract. A contract is different than a will, it's different than a gift, and it's different than intestacy. So on its terms, the Third Party Beneficiary Act does not apply. And what I think is important, there's a case that we cite called, excuse me, it's Beckhardt. There's two V's in here. The Ben and Jerris, the Fifth District case, which is unpublished, they cite, we cite Beckhardt. Beckhardt's important because they distinguish the Third Party Beneficiary Act and reverse the trial court because there was a contract there, too. There was a contract that was made in a settlement agreement between a husband and a wife. Involving children.  This case is different. It's a different contract, I agree. But the contract. It's not a written contract. Correct. But we still have that same body of law. What Judge Grady was asked to do was see if there was an oral contract, which you can only hear through testimony, and he did that. And so when we look at the Third Party Beneficiary Act, we can exclude its application by virtue of the actual text of the statute and the cause of action that was brought that does not invoke the act. Let me ask you this. Sure. Historically, I ask this question of counsel, historically in Illinois law, where there is clear testamentary intent in a document for a bank, like, for example, bank accounts, savings and loan accounts, in this case the Edward Jones accounts, the designation on those accounts, the beneficiaries, trumps the will. Why wouldn't it trump the contract? Because the statute didn't give that right. What the court is asking is really what does the statute require? It requires a will, a gift, or in testacy. We don't have that. And that's where I think the Beckhardt case is instructive. What happened in Beckhardt is invoking equity and applying a contract. And so we see then that, and that's where the Third District reversed the trial court. There was a latches argument in there, too, but the most important part being the facts and the claim that was made, because it determines whether or not we invoke the statute at all. But in that case, you know, one thing that concerns me is, and the court says it, Ryan the son, who was, you know, the subject of a change-of-life insurance, I think it was, to benefit the son. He didn't do it. He obtained a vested contingent right to those benefits, this is a quote, when the settlement agreement was entered and the minimum judgment became final. To me, this is not a vested right. I guess I'm concerned about that. And maybe it would be called a mere expectancy. I'm not sure. But I don't see it exactly the same. Well, let me add one word to the section that you're reading from that case. It says contingent. A contingent vested interest. That's what the contract is. And that's the important part of it. So it's contingent because by 2014 the agreement exists orally. What happens during that time? Rose is basically running Tom's businesses in reliance upon this contract that they agree to. So she's performing, she's relying. If what we see is a case I would ask the court to pay particular attention to is JATCO, a 1950 case from the Illinois Supreme Court. In JATCO they reversed the trial court for not finding an oral contract to make a will. The facts of JATCO have many parallels to Rose's situation. Here, though, it's a daughter helping her mom at age 65. She says, if you move into my house, I'll give you my house. There's nothing in writing. She and her husband and her kids move in and they do substantial renovations to the home, adding a basement, bathrooms, bedrooms, etc. Even a heater because her mom's house wasn't even heated. It was 1950. So what happens then? As mom gets older and starts to have cognitive issues, the daughter and the husband and family move out. And then she creates a will. And in the will she takes the home, which the daughter and her husband and her family have added, three bedrooms, a kitchen, all these things, and she divides it equally among the four daughters. Not to the daughter who lived with her, cared for her, and fixed the home. That's what Rose did. And without compensation. So one of the things you see in JATCO, they don't talk about compensation, but the Illinois Supreme Court case in Weidler does. Because this was an individual, not a relative, she moves into the house, she takes care of this guy, and he sounds like a real character from the facts of the opinion. And when she does that, she doesn't get paid. She's going to get the home. That's the same thing Rose did. She's running these businesses because Tom's not good at it. It's probably like my wife, too, who's much better at that stuff than me. And so when she's doing all of this, she's doing this based upon these agreements. So I would urge the court to read JATCO and read Weidler. I think they're instructive. I think JATCO is a case that's extremely helpful because they go and list out all the testimony. When my colleague is talking about against the manifest weight of the evidence, JATCO actually reverses the trial court for enforcing the will and not finding the oral contract. And the justice in that case, who is then the chief justice, lists out all the testimony. And as you have asked my colleague, there are four witnesses who testify to the terms of the contract. And then two witnesses who testify that they don't want Stephen and Michael to get it. So when we look at Tom's will, look at the provision at the back. Justice Burkett referenced some of this. It's record site sub E820B3. And it's this narrative portion above Tom's signature. And here he's talking about who Rose is and what she means to him. And one of the things he talks about is how the money should be used. And I think that if we look there and then look at what he has a specific disinheritance schedule. And so the irony, I think, of this appeal is what happens to Alan before we see you for oral argument. He passes away. The inequity then becomes urgent because what's going to happen if reversal is made is that Stephen's going to get it. But Tom signed this. It is evidence. It may or may not be a will depending on what the court finds. But it is evidence. And that's his signature and it's unrebutted. And so if reversal occurs, then the very thing that Tom didn't want to happen does. And there's clear, it's unrebutted in the trial record that Tom was angry at Stephen and angry at Michael for not helping. Edward Jones, in setting up these accounts, they recommend setting up these accounts because you can, first of all, they're easy to establish beneficiaries. You can change them at any time you want. They're generally inexpensive. There's really not much money involved. You don't have to hire a lawyer. You can change it any time during your lifetime. And you avoid probate. And Edward Jones also says if you don't review your beneficiaries, your assets could be inherited by someone you no longer intend. And that's what happened here or is happening here, right? Well, possibly. Judge Brady said no. Judge Brady said no. Judge Brady is ruling from the heart. For example, the unjust enrichment, how do you find that the elements of unjust enrichment are established? Thomas did nothing wrong. Well, we don't have to show wrong, I guess. No, you do have to show wrong. You don't have to show illegal, but you have to show wrong. Well, then maybe let's go back to the treatment of his mother and his father. Is that wrong? If he left them so that Rose took care of Alan and took care of Alma, is that wrong? I would say yes. There's the equity and where you would meet it. May I ask, how did the trial court judgment specifically deal with the Edward Jones account? Does the judgment speak to whom those will be? Did they go to Warburg's? No, I don't think he did, Your Honor. Let me just check if it works. He orders that his decision be provided to Edward Jones. He imposes the constructive trust over the Edward Jones account, too. For the benefit of Rose? For the benefit of Rose, correct. Thank you. Do you have any case that stands for the proposition that where there's a contract to make a will, that that will overcome or supersede the Third Party Beneficiary Act? I mean, other than, is it Becker that you cite? Becker. That's all we have, Your Honor. We could not find a case with the specific facts where the oral contract to make a will trumps the Third Party Beneficiary Act. I think it's an open question. So if the court decides that issue today, I think it would be an issue of first impression. But I would just take it back to the statute itself and the language it uses. These accounts were payable upon death, right? Yes. So upon Tom's death, those accounts belong to Emma? After the intervention from the lawsuit, that would have been true. And that was stopped. And what stopped it?  I think that when we look at the manifest way to the evidence, I would ask the court to look at the witness testimony just as the Supreme Court did in JATCO. And when we see that, we can stack it up. And then the most important part of it is, just as in JATCO, it's unrebutted. There is nothing in the trial that comes forward to knock out any of the elements of contract, any of the elements of performance, nothing. And so Judge Brady is faced with an unrebutted set of testimony, and he does what he should do when that evidence is presented to a trial court. That's clear and convincing. And JATCO says the same thing. They have six witnesses testify. In JATCO, we have four. When they see that, JATCO says, how could you enforce the will? Right? And so they trump the will using the oral contract to make a will. And so JATCO helps us understand and put in context how we apply wills and a contract to make a will. And what's remarkable about it is it's 75 years old. And it stands the test of time, the opinion, when you read it. So I'd ask the court to look there. One of the other things that I've also emphasized here is this other case, Weidler. Weidler is 1950, and I think JATCO is 1955. Weidler is not as detailed. They affirm a finding of an oral contract without laying out all the evidence like the justice did in JATCO. But what's important to me is that the plaintiff in JATCO was also not paid, as Rose wasn't either. So I would emphasize those two cases to the court. I think they're helpful for your decision. Can you respond to the plaintiff's argument, the defendant's argument, the citation to security casualty company, Washburn v. Dyson, and the Illinois Supreme Court said, because the legislature has provided a comprehensive statutory scheme governing distribution of assets from the liquidated and ensures the state equitable relief, different from that provided by statute was not available to the shareholders. The court said equity follows the law, and the legislature is, of course, empowered to limit the availability of equitable remedies. Isn't that what the third-party contract statute does? It does for wills, gifts, and intestacy. And let's just take those words from the legislature. It does not say contract. And so it doesn't apply as our position, respectively. I think I'm running out of time, so thank you very much. Thank you. Ms. Green, if you wish to respond, you may do so at this time. I just want to address a couple of his points. I think one of the first things that he said was that these were laypeople trying to apply the law, and I think that's, you know, unfortunately what happened in this case, that they just maybe had the intent to leave each other everything, and it just wasn't carried out in the technical legal manner that it should have been. And perhaps the trial judge was trying to correct that, you know, in a way to carry out their intent, but that's not the way the probate act is laid out. Instead, there are very, you know, definite rules about what you have to do to have an effective will and to take under it. Well, in this case, you say the intention is not enough. What do we need? What do you think is needed here? This sort of quid pro quo in agreement, like that somebody to testify that, yeah, Tom told me that, you know, he had this arrangement with Rose that if she did these things for him, you know, he was going to give her, you know, all of his assets. In one of the cases that we cite, there was some testimony where a neighbor said, yeah, he made a really good bargain. There's no testimony about a bargain or an agreement. It's just, you know, I would like to leave her my assets. And that if he did do a will, the will would reflect his intent, and the will that we have, whether it's valid or invalid, showed that he did not intend his Edward Jones accounts to go to plaintiff. What about counsel's argument that Section 30-1 does not apply to oral contracts? Well, what it applies to is the rule. It says these designations are not to be defeated or impaired by any statute or rule of law governing the transfer of property by will. So I think a rule of law would include contractual law and even equitable law, and that if there's any question, it should be read to carry out the intent of the legislature. They have not cited any case where, you know, a claim for an oral contract for will would defeat a beneficiary designation in the, I think it's the Beckert case that he cites, with a child that had a vested right in an insurance policy that couldn't be changed because it was a settlement agreement in a divorce proceeding that was approved by a judge. So that had not been vested. That could not be changed by a beneficiary under the Third Party Beneficiary Act. So Judge Grady's ruling in equity is a rule of law, his judgment? Yeah, I think it's broadly, you know, rule of law. Broadly covered by the provision. And I think that's, you know, they use broad terms, rule of law. So I think equity is encompassed within the rule of law. It's not just, you know, statutes or, you know, legal concepts versus equitable concepts. And they rely heavily on this Jacko case from the 1950s, where the daughter said she had been promised the house if she took care of things. But there it's more of a specific agreement, where you have a specific asset that there's an agreement and they're talking about the home. And then with respect to that specific asset, the daughter invested a lot of money and made a lot of changes that she probably wouldn't have done if she knew this would have been just left generally to her siblings, you know, and herself. So there's more specificity there. Also in that case, it didn't involve, as here, a will, you know, that is introduced into evidence. Whether it's valid or invalid, that's setting forth Tom's intent. So that, you know, that also wasn't an issue in that case here. The will should be considered. And we believe it was a valid will, which should even be given more weight than, you know, if it had been invalid as the trial court found. But if the court has no further questions, we'd ask again that you reverse the judgment that had been entered in favor of the plaintiff. I did want to comment on the excellent quality of both briefs. And thank you. Thank you. Thank you, counsel. We will take this matter under advisement. We're glad we could finally get it scheduled. It had been scheduled earlier, so now we've got that finished. We'll take it under advisement, and we will issue a decision in due course. We're going to stand in recess to prepare for our next case. Thank you.